# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PLANT FOOD SYSTEMS, INC.,**

        **Plaintiff,**

**-vs-**                                          **Case No. 6:11-cv-1880-Orl-28DAB**

**FOLIAR NUTRIENTS, INC.,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of Plaintiff's response (Doc. No. 70) to this Court's Order to Show Cause why the actions should not be dismissed for lack of subject matter jurisdiction (Doc. No. 65). Included in the response is a request to amend the operative complaint "to more clearly set forth the jurisdictional basis" for the action. The undersigned allowed the filing of a reply by Defendant (Doc. No. 72), and the matter is now ripe for review. For the reasons set forth herein, the Court **respectfully recommends** that the action be **dismissed** for lack of subject matter jurisdiction, and the request to amend be **denied**.

### Background

The case presents in an unusual posture. Pertinent history involves other proceedings and other courts, summarized as follows.

*The Patent Case*

Plaintiff and Defendant were parties to patent litigation, filed in this Court in 2004 (Case No. 6:04-cv-346-28DAB – herein "the Patent case"). The Patent case was an action for infringement of various Patents ('164 Patent, '837 Patent, '383 Patent, '860 Patent) owned by Foliar Nutrients, Inc. ("Foliar"). Foliar (Plaintiff in the Patent case and Defendant here) sought an injunction and damages,

including a reasonable royalty, arising out of the alleged infringements. (Patent case Complaint – Doc. 1). Plant Food Systems, Inc. ("PFS") answered, and filed affirmative defenses and a counterclaim (Patent case -Doc. 13). PFS alleged state law claims for tortious interference, and unfair and deceptive trade practices, and sought a declaratory judgment "of invalidity, unenforceability, and noninfringment" of the Patents-in-Suit. *Id.* Foliar amended its Complaint, adding two counts for infringement of two additional Patents ('910 and '041) (Doc. 26 in Patent case), and PFS answered, adding the two newly alleged Patents to its Counterclaim seeking a declaratory judgment of invalidity, unenforceability and noninfringement (Doc. 28).

In 2005, the Patent case was dismissed **with prejudice** on the parties' stipulation (Patent case – Docs. 71-72). In the Stipulated Dismissal with Prejudice (Doc. 71), Foliar and PFS dismissed the infringement action and the counterclaims, and all affirmative defenses to both. Although the Stipulation referenced a Settlement Agreement and requested the Court retain jurisdiction for purposes of enforcing it, the Agreement itself was not before the Court, and the Order dismissing the case did not reserve jurisdiction (Doc. 72–Patent case).

*The Settlement Agreement*

According to the papers filed in the instant action, the parties entered into a Settlement Agreement (Doc. 59, Ex. 1) with respect to the matters raised in the Patent case. The Agreement is comprehensive, and includes mutual broad releases and covenants not to sue. The Agreement provides that Foliar is to pay PFS a total of Fifty Thousand Dollars according to a particular schedule, and PFS agrees that it will not use monopotassium phosphate as a starting ingredient for the manufacture of certain of its products. The Agreement also provides, in relevant part:

> 9. **Jurisdiction and Law**. The validity, effect, and construction of this Settlement Agreement and any obligations undertaken pursuant hereto, and any dispute relating or arising from the negotiation, execution, or enforcement of this Settlement Agreement, shall be governed by the laws of the State of Florida without regard to conflicts of laws provisions.

> The parties irrevocably submit to the jurisdiction of the United States District Court, Middle District of Florida, Orlando Division, over any suit, action, motion, petition, or proceeding arising out of or in any way related to this Settlement Agreement and agree not to commence any such suit, action, motion, petition, or proceeding in any other court. The parties irrevocably waive, to the fullest extent permitted by law, any objection with either of them may have to the laying of venue of any such suit, action, motion, petition, or proceeding brought in any such court, and waive any objection that any such claim, suit, action, motion, petition, or proceeding brought in any such court has been brought in an inconvenient forum.

(Doc. 59-1, at 9).

*State Court proceedings*

According to Plaintiff's response to the show cause Order, all went well until the first $10,000.00 installment payment came due but was not provided. On or about May 24, 2007, PFS "made demand upon Foliar, to fully perform under the Settlement Agreement," and, in mid-2007, PFS filed suit in state court, seeking enforcement of the Settlement Agreement (Doc. No. 70). PFS amended its state court complaint, and Foliar moved for dismissal, asserting that this federal court retained jurisdiction over the matter, and that federal law otherwise preempted the state action as the claims relate to the patent laws. PFS filed a response brief which contended that the federal court did *not* retain jurisdiction and, in fact, had no jurisdiction over the action to enforce the Settlement Agreement.

Foliar filed a reply, contending that the action "was effectively a patent dispute." (Doc. No. 70, Exhibit G). PFS represents that the state court was persuaded by this argument, and, on September 17, 2010, the state judge dismissed the complaint, "finding that subject matter jurisdiction over this matter properly lies in the federal district court" (Doc. No. 70, Exhibit H). On November 16, 2010, on motion for rehearing or clarification, the state court ordered that it would allow the filing of an amended complaint, but cautioned that "if the amended complaint continues to contain

allegations giving rise to federal subject matter jurisdiction, it may be dismissed with prejudice."[1] (Doc. No. 70, Exhibit H). It appears that Plaintiff did not file an amended complaint in state court and did not otherwise seek review of the trial court's ruling.

*The instant litigation*

Over a year later, on November 23, 2011, Plaintiff filed this case, alleging that the parties differ in their interpretation of the Settlement Agreement. In the initial and now Amended Complaint, Plaintiff sues Defendant in three counts: 1) Declaratory Judgment; 2) Breach of Contract; and 3) Reformation of the Settlement Agreement. Defendant answered, and counterclaimed for breach of contract, breach of implied covenant of good faith and fair dealing, and fraud in the inducement of the settlement agreement (Doc. No. 64). Although Foliar contended before the state court that the matter was "effectively a patent dispute," it now says that: "All of the claims by either party in this action relate to the Settlement Agreement and its negotiation. Foliar has not asserted any patent infringement claims in this action as to any of the patents it owns." (Doc. 72).

As the Amended Complaint involves the interpretation, enforcement and reformation of a contract, and there was no indication that diversity jurisdiction was present, the Court issued an Order to Show Cause why the action should not be dismissed (Doc. No. 65).[2] As noted above, the parties have filed their responses and the matter is ripe for resolution.

**Issues and Analysis**

Parties seeking to invoke the limited jurisdiction of the federal court over a cause of action must show that the underlying claim is based upon either diversity jurisdiction (controversies

---

[1] Note that a dismissal on the ground that a court lacks jurisdiction ordinarily does not act as an adjudication on the merits so as to support dismissal with prejudice.

[2] At the time the show cause Order was drafted, the counterclaim had not been filed. Upon the filing of Plaintiff's response to the show cause Order, the Court directed Foliar to file a response to Plaintiff's assertion that the Court had subject matter jurisdiction over the dispute (Doc. 71). Foliar did so (Doc. 72), and the Court has considered all of the filings.

-4-

exceeding $75,000 between citizens of different states) or the existence of a federal question (*i.e.,* "a civil action arising under the Constitution, laws, or treaties of the United States"), in which a private right of action has been created or is implied by Congressional intent. *See* 28 U.S.C. § 1331 and § 1332; *Alexander v. Sandoval,* 532 U.S. 275, 293 n.8 (2001).

Here, Plaintiff contends that jurisdiction is present over the Amended Complaint and, alternatively, moves to allow the filing of a Second Amended Complaint to "clean up the jurisdictional and other allegations," contending that "PFS should be allowed to plead in the alternative that if the Settlement Agreement is set aside, rendered unenforceable, or PFS is excused from performing due to Foliar's non-performance or breach, then PFS seeks a declaration that Foliar's patents are invalid and/or rendered unenforceable due to Foliar's misrepresentation to the U.S. Patent & Trademark Office during reexamination." (Doc. 70). For its part, Foliar "agrees that there is sufficient federal subject matter jurisdiction to keep this action before the Court," objects to granting leave to amend the Amended Complaint, and asserts that even if there is no jurisdiction over the operative complaint, there is jurisdiction over the counterclaims sufficient to order realignment of the parties and allow PFS to bring its existing claims as compulsory counterclaims (Doc. 72). The Court is unpersuaded that jurisdiction exists under any of these theories.

*Reservation of Jurisdiction*

In the Amended Complaint, Plaintiff asserts federal jurisdiction over this dispute, as follows:

3. The Court has jurisdiction in this matter in that the parties were before this Court in case number 6:04-cv-00346-JA-DAB, a patent infringement case brought by FOLIAR. A subsequent Settlement Agreement was entered into on June 22, 2005, which was supposed to resolve all issues between the parties. (A copy of the Settlement Agreement is attached hereto as Exhibit "A"). Paragraph 9 of the Settlement Agreement states as follows:

> The parties irrevocably submit to the jurisdiction of the United States District Court, Middle District of Florida, Orlando Division, over any suit, action, motion, petition, or proceeding arising out of or in any way related to this Settlement Agreement and agree not to commence any such suit, action, petition, or proceeding in any other court.

>    4. Jurisdiction remains with this Court by virtue of the June 22, 2005 Settlement
>    Agreement.

(Doc. No. 59).

As explained in the show cause Order, to the extent Plaintiff is asserting that jurisdiction flows from the terms of the 2005 Settlement Agreement, it is mistaken. In the Patent case, the parties filed a Stipulated Dismissal with Prejudice under Federal Rule 41(a)(1), in which the parties "request the Court retain jurisdiction for purposes of enforcing the Settlement Agreement." (Case No. 6: 04-cv-346-JA-DAB, Doc. 71). The Order dismissing the Patent case with prejudice, however, did not incorporate the terms of the settlement agreement, nor did the Court reserve jurisdiction with respect to its enforcement (Case No. 6: 04-cv-346-JA-DAB, Doc. 72). As recently explained by the Eleventh Circuit:

> In *Kokkonen*,[3] the Supreme Court recognized that the enforcement of a settlement agreement falls outside of the scope of ancillary jurisdiction of the federal courts, even when the court had jurisdiction to hear the underlying case. 511 U.S. at 379–80, 114 S.Ct. at 1676. The Supreme Court reasoned that a district court could retain jurisdiction to enforce a settlement agreement with consent of the parties and of the court, provided the district court issues an order requiring compliance with the settlement agreement. *Id.* at 381, 114 S.Ct. at 1677. In that case, non-compliance would be a violation of a court order and the district court could use its ancillary jurisdiction to enforce its orders (and by extension enforce the settlement agreement). *Id.* The Supreme Court stated that a district court could require compliance by either making the settlement agreement part of the court order by a separate provision "retaining jurisdiction" or by incorporating the terms of the agreement into the order itself. *Id.* at 381, 114 S.Ct. at 1677.
>
> Underlying *Kokkonen* is the well-established proposition that jurisdiction cannot exist by mere consent of the parties. *See, e.g., Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir.1983). To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough. *See SmallBizPros* 618 F.3d at 464 n. 4 (speculating that a situation might arise in which a district court may lack jurisdiction to enforce a settlement agreement because it issued no order retaining jurisdiction even though the parties expressly provide for ancillary jurisdiction in their stipulation for dismissal).

---

[3]*Kokkonen v. Guardian Life Insurance of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

*Anago Franchising, Inc. v. Shaz, LLC,* 677 F.3d 1272, 1278-1279 (11th Cir. 2012) An agreement of the parties is insufficient as "[t]he district court must also issue an order specifically retaining jurisdiction in accordance with *Kokkonen* because ancillary jurisdiction allows a district court to effectuate its orders, not to enforce stipulations." *Id.* at 1280). Absent any such order in the Patent case, this Court did not retain jurisdiction over the Settlement Agreement. "When the settlement agreement is not made part of a court order, it is merely a private contract arising out of a case in federal court and has nothing to do with the underlying case." *Anago*, 677 F.3d at 1281 (internal quotations omitted).

Further, even though the terms of the Agreement provide that the parties "submit to the jurisdiction" of this Court, this provision relates, at best, to *personal* jurisdiction. It does not, and cannot, serve to create subject matter jurisdiction where none otherwise exists. *See, generally, Kokkonen,* 511 U.S. at 382, 114 S.Ct. at 1677 ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

As the Court did not reserve jurisdiction over the Agreement, it falls to Plaintiff to show that the action is otherwise properly before the Court. In its show cause response, Plaintiff contends that this Court has subject matter jurisdiction "because the parties to the suit are diverse and the amount in controversy exceeds $75,000. In addition, legal issues concerning the patents at the heart of the Settlement Agreement are in play, legal issues which are reserved for the federal courts of the United States under Title 28 U.S.C. §1338." (Doc. No. 70). Thus, Plaintiff contends that this matter is properly before the Court on both federal question and diversity jurisdiction

*No Federal Question Is Pled*

As noted, Plaintiff has pled three causes of action, two of which are clearly brought pursuant to state law. As for the third claim, although Plaintiff has not clarified whether its count for declaratory relief is under state or federal law, for present purposes, it is of no moment. An action for

declaratory relief, such as the one at issue here, must independently satisfy federal subject matter jurisdiction requirements; the Declaratory Judgment Act does not create an independent basis for jurisdiction. *See* 28 U.S.C. § 2201(a) (authorizing district courts to grant declaratory relief in "a case of actual controversy within its jurisdiction"). Thus, in order for Plaintiff to maintain its action for declaratory judgment in this Court, it must still establish the source of the Court's jurisdiction. *See Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir.1989) ("[T]he Declaratory Judgment Act ... does not, of itself, confer jurisdiction upon the federal courts; a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question.").

Plaintiff contends that the facts in effect at the time of the filing of the initial Complaint satisfy subject matter jurisdiction under 28 U.S.C. § 1338, which grants federal district courts original jurisdiction over any civil action "arising under any Act of Congress relating to patents . . .". In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809, 108 S. Ct. 2166, 100 L.Ed. 2d 811 (1988), the Supreme Court stated that Section 1338(a) jurisdiction extends to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Neither prong of this standard is met here.

The first prong is not met in that the causes of action in the operative complaint are creatures of state law and are not claims created by federal patent law. As for the second prong, the Supreme Court recognized in *Christianson* that to establish section 1338 jurisdiction, it is not necessarily sufficient "that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential." 486 U.S. at 810, 108 S.Ct. 2166. If there are " 'reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to

the relief it seeks' ... then the claim does not 'arise under' those laws." *Id*. (internal citation omitted). Thus, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.*

Applied here, PFS contends that the claims raised for declaratory relief and for breach of contract require resolution of substantial questions of federal patent law in that the Settlement Agreement provides, in part, that PFS' products will not contain certain specified ingredients "as is claimed in the patents-in-suit."[4] According to Plaintiff, the two terms, "enhanced fungicidally effective amount" and "growth stimulating effective amount" are not expressly defined in the Patents and, in order to define these terms and to apply them to the Settlement Agreement, the Court will have to construe the meaning of the aforementioned claim language, and that task is exclusively reserved for the federal courts. PFS cites to the decision of the state court judge, in support of this contention.

With all due respect to the state court, this Court sees it differently. The first claim seeks a declaration of rights under the Settlement Term Sheet and Settlement Agreement; it is not seeking to construe any of the Patents-in-suit. Moreover, as is set forth in Count Three, the main issue in this complaint is the alleged conflict between the Settlement Term Sheet (which provides, in part, that the PFS Products/Composition would be "derived" from polyphosphates) and the Settlement Agreement itself (which provides that that "PFS Products/Compositions "shall contain polyphosphates"). Indeed, although the complaint also alleges an apparent ambiguity regarding the terms "enhanced fungicidally effective amount" and "growth stimulating effective amount," Plaintiff does not ask the Court to construe either term. Rather, PFS contends that these provisions were never bargained for,

---

[4]The Settlement Agreement states:
3. PFS Products/Compositions.
(b) Foliar and PFS agree that the:
    (iii) PFS Products/Compositions will not contain Orthophosphates and phosphites, both being present in an "enhanced fungicidally effective amount" as is claimed in the patents-in-suit; and
    (iv) PFS Products/Compositions will not contain Orthophosphates and phosphites, both being present in a "growth stimulating effective amount" as is claimed in the patents-in-suit.

-9-

and the specific relief sought with respect to this ambiguity is to "Declare that Paragraphs 3(b)(ii), 3(b)(iii) and 3(b)(iv) be stricken" from the Agreement (Doc. 59 at p. 12).[5]

Moreover, in the Amended Complaint, Plaintiff contends that it is entitled to the relief it seeks for several reasons; including that the "unbargained for terms" were not part of the Settlement Term Sheet, no consideration was given for their addition to the Agreement, Defendant "must have known" the constitution of the products before suit was filed and thus "cannot now allege" that they violate the Agreement, and enforcement of the provisions "make it impossible to produce any product" that satisfies the definitions. (Doc. 59, Allegations 28-31). Since there are "reasons completely unrelated to the provisions and purposes" of federal patent law why petitioners "may or may not be entitled to the relief they seek," the claim does not "arise under" federal patent law. *Christianson,* 486 U.S.at 812. As the Court is not asked to construe Patent terms, and the mere mention of a Patent term is not enough to create a substantial question of patent law under these facts in any event, the Court finds no basis for assertion of federal question jurisdiction on this ground.

Plaintiff next contends that allegations in paragraphs 15 and 52 of its pleading "make reference to Foliar's tortious interference with Plaintiff's contractual and potentially advantageous business relationships by threatening patent litigation" and "such claims can form the basis of federal jurisdiction in a declaratory judgment action," citing *VG Innovations, Inc. v. Minsurg Corp.*, 8:10-CV-1726-T-33MAP, 2011 WL 1466181 (M.D. Fla. Apr. 18, 2011); *Clearplay, Inc. v. Nissim Corp.*, 555 F. Supp. 2d 1318 (S.D. Fla.2008); *Boldstar Technical, LLC v. Home Depot*, *Inc.,* 517 F.Supp.2d 1283, 1289 n. 3 (S.D.Fla. 2007); and *In Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories., Inc.*, 348 F.Supp.2d 1335, 1342 n. 9 (S.D. Fla. 2004) (reversed and remanded on other grounds, *Breckenridge Pharm.*, 444 F.3d 1356).

---

[5]Count One seeks the entry of a Declaratory Judgment in Plaintiff's favor as follows: "Declare Plaintiff's right under the Settlement Term Sheet and Settlement Agreement *and find that the term "derived from" was the intended term* in the agreement." (Doc. 59 at p. 9) (emphasis added).

There is no "claim" for tortious interference pled in the cited paragraphs of the Amended Complaint, or anywhere else in the pleading. Paragraph 15 merely refers to claims made in the prior Patent case; claims which were, as noted in the history above, dismissed by the parties *with prejudice.* Plaintiff does not explain how dismissed claims can form a basis for federal jurisdiction. As for Paragraph 52, while this allegation references contact with customers and distributors of PFS demanding that they obtain a license under threat of litigation, Plaintiff pleads only that "this violates . . . the Settlement Agreement." Far from being a claim for a tort or even a claim for declaratory judgment, Paragraph 52 is included in a count for "breach of contract" (Doc. 59). This distinguishes the instant case from the cited cases, all of which construed an explicit count for intentional interference with business relationships. *See VG Innovations, Inc.* (a patent case); *Clearplay, Inc.* (addressing whether explicit claims of interference were preempted); *Boldstar Technical, LLC* (a patent case); *Breckenridge* (a patent case). Plaintiff fails to cite any case where an *unasserted* claim for tortious interference with business relationships gives rise to federal question jurisdiction.

Nor is the Court persuaded by Plaintiff's assertion that the Patents are invalid and/or unenforceable due to Foliar's alleged misrepresentation to the PTO during reexamination. None of these assertions appear in the Amended Complaint and there is no showing that these claims of invalidity and unenforceability are not precluded by the earlier dismissal of the Patent case or the explicit language of the Settlement Agreement. Again, the Court cannot find that jurisdiction is present over claims that are not pled. The Court finds no basis for an assertion of federal question jurisdiction over this pleading.

*Diversity Jurisdiction*

Plaintiff contends that the action also rests on diversity jurisdiction. Diversity jurisdiction exists when the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Federal jurisdiction pursuant to 28 U.S.C.

-11-

§ 1332 exists only when there is complete diversity between the plaintiffs and the defendants and the amount in controversy requirement is met. *See Owen Equip. and Recreation Co. v. Kroger,* 437 U.S. 365, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). Plaintiff has adequately pled that the parties are diverse. The amount in controversy, however, does not meet the jurisdictional threshold.

Plaintiff's claims revolve around the Settlement Agreement, attached to the operative complaint. The breach of contract claim is the only count for specified damages, and it asserts damages in the amount of $30,000.00, plus interest and costs. As for the counts for reformation and declaratory relief, where, as here, a plaintiff seeks declaratory relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citation omitted). Where jurisdiction is based on a claim for indeterminate damages, the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum. *Id.* There is no showing here that the value of declaring that the contract provides (or reforming the contract to provide) what Plaintiff says it already provides meets the monetary threshold.

In an attempt to ameliorate this deficiency, Plaintiff contends that the case is "based, in part," on a demand for patent royalty made by Defendant and proffers a Declaration to show that, in private conversation, Defendant's principal told Plaintiff's principal that a license would cost an amount which, based on Plaintiff's sales volume, would exceed the statutory requirement. These allegations are not contained in its pleading, however, and Plaintiff does not seek a declaration that any royalty is not owed.[6] Rather, Plaintiff pleads as follows:

> 52. (a) Recent correspondence from FOLIAR in a letter dated August 1, 2011 suggests FOLIAR not only refuses to pay the settlement proceeds owed, but unbelievably now

---

[6]Moreover, in Defendant's response brief, Foliar makes clear that it is not suing for patent royalties, but for contract damages (Doc. 72 at p.4, fn. 1).

-12-

> is demanding a license from PFS to avoid future litigation. A true and correct copy of the letter is attached hereto as Exhibit "C". This position by FOLIAR completely subverts Section 6 of the Settlement Agreement, by which FOLIAR provides a covenant not to sue for infringement of any of the patents-in-suit.
>
> (b) FOLIAR has commenced actions in material breach of the Settlement Agreement. Specifically, FOLIAR has commenced contacting customers and distributors of PFS demanding they obtain a license or are threatened with a patent infringement lawsuit for sale of product manufactured by PFS. On November 21, 2011, FOLIAR'S attorney sent a "cease and desist" letter to a customer of PFS. A true and accurate copy of said letter is attached hereto as Exhibit "D". This violates paragraph 6 of the Settlement Agreement.
>
> WHEREFORE Plaintiff, PLANT FOOD SYSTEMS, INC., demands final judgment be entered against Defendant, FOLIAR NUTRIENTS INC., **for damages of $30,000.00** plus prejudgment interest and costs, as well as such other relief as the Court deems just and proper.

(Doc. 59, p. 10 – emphasis provided). To the extent that Plaintiff's claims are "based, in part" on a perceived demand for royalties or a license, Plaintiff has explicitly included that demand in its claim for breach of contract and has valued its damages at $30,000 – well shy of the required amount in controversy.

Nor is the Plaintiff aided by relying on Foliar's counterclaim. Although the counterclaim purports to allege generally that the amount in controversy for *Defendant's* claims (for breach of the Settlement Agreement, breach of covenant of good faith and fair dealing implied in the Settlement Agreement, and fraud in the inducement of the Settlement Agreement) exceeds $75,000, the amount in controversy with respect to the *complaint* is the object of the litigation from *Plaintiff's* perspective, not Defendant's. *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 219-220 (11th Cir. 1997).  Indeed, Plaintiff concedes in its papers (Doc. 70, fn. 3) that a counterclaim demand amount cannot serve as the basis for establishing the amount in controversy for

the complaint.[7]  The Court sees no basis for the assertion of diversity jurisdiction over the Amended Complaint.

*Whether to allow amendment*

Perhaps anticipating this conclusion, Plaintiff asks for leave to amend its pleading "one last time" to properly plead jurisdiction.  Foliar finds this to be "unnecessary," and further objects to a more expansive amendment to add new claims, "since [as] Foliar has not sued PFS for patent infringement nor has Foliar threatened to sue PFS for patent infringement, PFS cannot establish the federal subject matter jurisdiction necessary to support declaratory judgment claims challenging the validity or enforceability of Foliar's patents." (Doc. 72).

Plaintiff has had opportunities to amend, as reflected by the instant operative complaint, and fails to show good cause for why it did not include a sufficient jurisdictional basis for its claims in earlier pleading.  Further, any additional amendment would be untimely.  While these reasons might be insufficient to deny leave to amend, *W.R. Huff Asset Management Co. v. Kohlberg, Kravis, Roberts,* 209 Fed.Appx. 931, 934 (11th Cir. 2006) (noting "leave to amend should be liberally granted when necessary in the interest of justice," Fed.R.Civ.P. 15(a), and "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial"), these are not the only grounds supporting denial of the request.

Plaintiff has not proffered a proposed Second Amended Complaint, but alludes to the proposed additional claims and allegations in its response to the show cause Order.  To the extent Plaintiff wants to amend to add a count seeking a declaration that it does not owe a royalty to Defendant (Doc. 70 at pp. 7-8), such a claim is contrary to Foliar's pleadings and representations

---

[7] Interestingly enough, there is some support for the proposition that a court, in a case originally filed in federal court, may consider a compulsory counterclaim in determining whether the amount in controversy has been met. *See, e.g., Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 81 S. Ct. 1570, 6 L.Ed.2d 890 (1961). The Eleventh Circuit, however, noting that *Horton* has been criticized, has declined to "pass judgment on whether such a method of calculation is proper." *Federated Mut. Ins. Co., supra,* 329 F. 3d at 808, fn. 3. Regardless, as the Court finds that jurisdiction has not been established over the counterclaim in any event, as discussed *infra*, applying *Horton* would not aid the parties.

here, explicitly denying that it is seeking patent damages from PFS and noting that it "has not sued PFS for patent infringement in this action *nor has Foliar threatened to sue PFS for patent infringement.*" (Doc. 72, fn. 1-emphasis added).  As there is no current *or threatened* suit for infringement, there does not appear to be a case or controversy regarding royalties for the Court to adjudicate[8] and amendment to add such a claim would be futile.  Further, amendment to challenge the validity of Foliar's Patents would also be futile, in view of the prior dismissal *with prejudice* of such claims, and the explicit language in the Settlement Agreement precluding such a suit by PSC.[9] The Court finds no jurisdiction over the existing pleading and that the proposed amendments would not establish the jurisdictional prerequisites.

*Jurisdiction over the counterclaim and realignment*

Having concluded that the Court does not have subject matter jurisdiction over the Amended Complaint and that allowing further amendment would not cure this deficiency, the Court turns to

---

[8] The federal courts are confined by Article III of the Constitution to adjudicating only actual "cases" and "controversies." *Malowney v. Federal Collection Deposit Group,* 193 F.3d 1342, 1346 (11th Cir.1999). Moreover, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." *Id.* at 1347. Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. *See Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir.1985). "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* (internal quotations omitted). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* at 1552.

[9] The Settlement Agreement provides the following "Covenants Not to Sue" :
  (a). Foliar covenants not to sue PFS, PFS customers or end users of the PFS Products/Compositions that are formulated according to Part 3(b) above, for patent infringement of any of the patents-in-suit for the manufacture, sale, offer to sell or use of such PFS Products/Compositions, on the condition that PFS does not challenge the validity of the patents-in-suit.

  (b) PFS covenants not to challenge the validity of the any [sic] of the patents-in-suit, on the condition that Foliar does not sue PFS, PFS customers or end users of the PFS Products/Compositions, for patent infringement of any of the patents-in-suit for the manufacture, sale, offer to sell or use of the PFS Products/Compositions. . . .

(Doc. 72-1 at p. 6). *See, generally, Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). ("Ablaise's covenant not to sue avowed that Ablaise would not sue Dow Jones for any acts of infringement of its '530 patent. The covenant therefore extinguished any current or future case or controversy between the parties, and divested the district court of subject matter jurisdiction.")

Foliar's contention that jurisdiction over its *counterclaim* can save the day, as the Court can simply realign the parties and go forward.

"When a plaintiff's complaint is dismissed for lack of federal jurisdiction, a counterclaim which has no independent grounds of jurisdiction may be dismissed." *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 122 (5th Cir. 1980). "Generally, when a complaint is dismissed for lack of federal jurisdiction, compulsory counterclaims, because they arise out of the same transaction as the original claim, also will be dismissed." *Burns v. Rockwood Distributing Co.*, 481 F.Supp. 841, 848 (N.D. Ill. 1979) (internal citations omitted). "If an independent jurisdictional basis exists, however, the court is not precluded from determining the merits of the counterclaim despite dismissal of the primary claim." *Id.*

Here, Foliar argues that the Court has jurisdiction over its counterclaims, "based on independent federal diversity subject matter jurisdiction." Pursuant to this exception, "where a counterclaim states a cause of action seeking affirmative relief independent of that stated in the complaint, the dismissal of the complaint does not preclude a trial and determination of the issues presented by the counterclaim." *Switzer Bros., Inc. v. Chicago Cardboard Co.*, 252 F.2d 407, 410 (7th Cir. 1958). The key, of course, is that the counterclaim be *independent* of the main claim. As the Tenth Circuit has noted:

> But it is apparent in those exceptional cases where a counterclaim may survive the jurisdictional failure of a complaint that at least three premises must exist. Jurisdiction must exist within the scope of the allegations of the counterclaim; the claim made in the counterclaim must be independent of that made in the main case; and, lastly, affirmative relief must be sought.

*Manufacturers Cas. Ins. Co. v. Arapahoe Drilling Co.*, 267 F.2d 5, 8 (10th Cir. 1959). *See, La Gorce Country Club v. Underwriters at Lloyd's of London*, No. 09-22340, 2009 WL 4927557 (S.D. Fla. 2009) (applying this test and dismissing counterclaim alleged to have an independent basis of federal jurisdiction). The counterclaims here do not meet this test.

-16-

As Foliar admits: "All of the claims by either party in this action relate to the Settlement Agreement and its negotiation." While the counterclaims, on their face, appear to allege (without any factual support) claims in excess of diversity jurisdiction requirements, *all* of the claims, as noted, relate to the Settlement Agreement and its negotiation, and are therefore not 'independent' of the claims in the main case.

Moreover, the allegations, construed under the applicable pleading standard, fail to establish the existence of jurisdiction over the counterclaim. The pleader has an obligation to allege the grounds of his entitlement to relief consistent with the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). With respect to alleging jurisdiction, the person seeking to invoke federal jurisdiction has the burden to demonstrate that the court has subject matter jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and a pleader "must affirmatively allege facts demonstrating the existence of jurisdiction . . ." *Taylor v. Appleton,* 30 F. 3d 1365 (11th Cir. 1994). Applied here, the pleading fails to adequately allege how any of the counterclaims survive the *res judicata* effect of the dismissal with prejudice, nor is there any factual predicate pled to support the requisite amount in controversy for any claim that might survive. As jurisdiction has not been shown to exist within the scope of the allegations of the counterclaim, and the counterclaim is not independent of the main claim, the dismissal of the Amended Complaint supports dismissal of this counterclaim.

**Conclusion and Recommendation**

In sum, the parties dismissed all of their contentions with respect to the Patents, with prejudice, in favor of the Settlement Agreement, and the Court did not retain jurisdiction over enforcement of same. The Court finds that all of the causes of action filed by either party here arise, if at all, from whatever rights the parties may have by virtue of the Settlement Agreement, and neither

party has made a sufficient showing that these claims are within the subject matter jurisdiction of this Court. On the present showing, the interpretation, reformation, and/or enforcement of the Settlement Agreement is a matter for the state courts. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction," *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001), it is **respectfully recommended** that the action be **dismissed**, the request to amend be **denied,** and that all pending motions and matters be terminated and the case closed. [10]

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 3, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[10] The Court is aware of the consequences of its recommendation that the entire action be dismissed for want of jurisdiction. As Plaintiff points out, it was unsuccessful in its previous effort to prosecute its claims in its forum of choice - state court - due to Defendant's success at persuading the state court that federal court had exclusive jurisdiction. The fact that Foliar may have led the state court to err, however, does not create federal jurisdiction where, as here, none exists. As the state court dismissal was not with prejudice, the parties are left to their state court remedies or, alternatively, any neutral third party the parties may agree on as appropriate decision maker (given the jurisdictional conundrums they have created for themselves).